UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT RHODES,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                                 07-CV-470S

UNITED STATES OF AMERICA,

                              Defendant.


# I.  INTRODUCTION

Plaintiff Robert Rhodes, a former Department of Homeland Security ("DHS"),

Customs and Border Protection ("CBP")[1] Officer, commenced this action on July 23, 2007,

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et. seq.. (Docket No.

1.)  Plaintiff filed an Amended Complaint on January 9, 2008, alleging five causes of action.

(Docket No. 14.)

Presently before this Court is Defendant's Motion to Dismiss Plaintiff's Amended

Complaint pursuant to Rule 12(b)(1), and alternatively, Rule 56 of the Federal Rules of Civil

Procedure. (Docket No. 17.)[2]  Having considered the parties' written submissions and the

applicable law, this Court will grant Defendant's motion and dismiss Plaintiff's Amended

Complaint.

---

[1] In 2003, CBP became an official agency of the Department of Homeland Security, whose sub-agencies also include the Bureau of Immigration and Customs Enforcement ("ICE") and the United States Citizenship and Immigration Services ("USCIS").

[2] In support of its motion, Defendant filed a memorandum of law, a Statement Of Material Facts As To Which There Is No Issue To Be Tried with appendix, and a reply memorandum of law. (Docket Nos. 18-20, 27.) Plaintiff has filed a memorandum of law, affidavits, an attorney affirmation, and a Statement of Material Facts with appendix in opposition to Defendant's motion. (Docket Nos. 24-26, 28-31.)

## II. BACKGROUND

**A.    Facts**

The following facts are not in dispute.[3]

On July 21, 2004, Plaintiff was involved in an incident at the Rainbow Bridge, Niagara Falls, New York, where he was on duty at the bus and pedestrian inspection terminal. Allegations were made by Supervisory Customs and Border Protection Officer ("SCBPO") Martin Mahady to the DHS Immigration and Customs Enforcement ("ICE") Resident Agent in Charge, Office of Professional Responsibility ("OPR"), that on that date Plaintiff was involved in an incident with a Chinese national, Zhao Yan ("Zhao") wherein Plaintiff administered pepper spray to subdue Zhao and may have struck her in the head while restraining her.

The following day, OPR Senior Special Agents ("SSAs") Donald Mania ("Mania") and Steven MacMartin ("MacMartin") began their investigation of the allegations of excessive force by Plaintiff against Zhao. Mania and MacMartin interviewed several witnesses to the incident involving Plaintiff and Zhao, and took photographs of Zhao's injuries.

On July 22, 2004, at approximately 6:30 p.m., a warrant for the search of Plaintiff's person was signed by Magistrate Judge Hugh B. Scott, Western District of New York. Approximately two hours later, Plaintiff was arrested for a violation of 18 U.S.C. § 242,

---

[3] Plaintiff did not specifically controvert the facts in the Defendant's statement of facts. (Docket No. 18.) Accordingly, this Court deems those facts admitted pursuant to Loc. R. Civ. P. 56(a)(2).

Deprivation of Rights under Color of Law.[4] Plaintiff's arrest was based on upon a criminal complaint and a warrant for arrest signed by Magistrate Judge Scott.

During the morning hours of July 23, 2004, the warrant for the search of Plaintiff's person was executed, and photographs were taken of Plaintiff. He was subsequently arraigned and charged under 18 U.S.C. § 242, pleaded not guilty, and was released on $50,000 bond.

On July 27, 2004, a federal Grand Jury convened and indicted Plaintiff on August 11, 2004, charging him with a one-count violation of 18 U.S.C. § 242, Deprivation of Rights under Color of Law.  Plaintiff was arraigned on August 13, 2004, and pleaded not guilty to the charge.

A jury was seated to hear evidence in the case of <u>United States v. Rhodes</u>, 04-CR-196 (W.D.N.Y) on August 18, 2005. On September 8, 2005, the jury returned a verdict of not guilty.

Following the not guilty verdict, DHS/ICE OPR conducted an internal security investigation to determine whether the misconduct allegations made against Plaintiff were substantiated. Specifically, whether Plaintiff used unreasonable force while detaining Zhao and whether he made false material statements to CBP or to ICE on July 21 or 22, 2004. After the internal security investigation and the report of final investigation were complete,

---

[4] 18 U.S.C. § 242 reads, in relevant part, "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both . . . ."

3

CBP determined that were substantiated allegations of misconduct against Rhodes.

On July 21, 2006, Plaintiff submitted an administrative Claim for Damage, Injury, or Death (Form SF-95) in the amount  $25,000,000 for "psychological and emotional injury trauma" resulting from the criminal and internal proceedings against him. Plaintiff's claim was denied by DHS on May 23, 2007.

## B.   Plaintiff's Allegations

The allegations of Plaintiff's Amended Complaint are in dispute. By affidavit, Plaintiff attests that on July 21, 2004, he was working at the Rainbow Bridge performing inspections of pedestrians, buses, and tour vans entering the United States from Canada. (Plaintiff's Aff. (Docket No. 24), ¶ 4.) At approximately 11:00 p.m., a black male passed through Plaintiff's booth when another CBP Officer, Angelo Arcuri ("Arcuri") observed a bulge at the small of the man's back. Arcuri approached the man, patted down the area, and found an object taped to his back. Plaintiff assisted Arcuri in restraining the man, and pressed the "duress" button to summon assistance from other officers.  (Id., ¶¶ 5-8.) Arcuri then brought to Plaintiff's attention three women standing outside the exit doors looking in, and directed Plaintiff to bring the women in for questioning. (Id., ¶ 9.) When Plaintiff approached the women and gestured them to come inside, they backed up and said, "no, no, no," and began to run away. (Id., ¶ 11.) Despite Plaintiff's yells to stop, the women continued to run, and Plaintiff pursued them on foot. (Id., ¶ 12.)

Plaintiff caught up with one of the women, later identified as Zhao, and attempted to grab her left arm, but she pulled away. According to Plaintiff, Zhao then began to scratch and kick Plaintiff.  (Id., ¶ 13.) At that point, Plaintiff produced a can of pepper spray and discharged it once in Zhao's face in a 1-2 second burst. As Plaintiff reached for Zhao's

arm, she again began to hit and kick Plaintiff, who then discharged a second burst of pepper spray.  As Zhao continued to struggle with Plaintiff, Plaintiff attests that her hand "was getting close to my gun," so he "pushed her off center, whereupon I brushed against the building." (Id., ¶¶ 14-15.) Fellow CBP Officer Emmett Russell ("Russell"), assisting Plaintiff, then picked up Zhao, brought her to the center of the walkway, and applied an "arm bar to bring her to the ground." At that point, Plaintiff observed the top of Zhao's head make contact with the ground. (Id., ¶ 16.) While her head was on the ground, Russell pulled Zhao's legs out to straighten them, and as a result, "her head slid along the concrete paving stones that constituted the walkway." (Id., ¶ 16.)[5]

Plaintiff approached Zhao, and, to control her movements, placed his knee on the left side of her back. While Russell "got control of Ms. Zhao's right hand," a third CBP Officer, Amina Zinnerman ("Zinnerman") approached and attempted to control Zhao's left hand. (Id., ¶¶ 17-18.) At that point, Plaintiff "readjusted [his] knees" for the purposes of relieving pressure upon them to control Zhao's body. He then placed his hands on top of her head and one knee against her shoulder. (Id., ¶ 19.) Three times Zhao attempted to raise her head, and "each time" Plaintiff "took [her] head with both fists and pressed it back down, as I had been trained to do under such circumstances, because of the potential of the subject spitting on or biting an officer. . . ." (Id., ¶ 20.)

Zinnerman also continued to struggle with Zhao. When Zinnerman momentarily released Zhao's hand to produce her handcuffs, Zhao's hand immediately went beneath her body in the vicinity of her handbag, from which she retrieved a camera. Zhao opened

---

[5] Plaintiff's affidavit contains an apparent typographical error listing two consecutive paragraphs numbered "16." Thus, the  Court has related the facts in the same order as presented by the Plaintiff.

the back of the camera to expose the film inside. (Id., ¶¶ 21-22.) Zinnerman again took hold of Zhao's left arm. According to Plaintiff, Russell then tapped his shoulder, telling him, "Rocky, stop,"[6] whereupon Plaintiff released Zhao's head and backed away. (Id., ¶ 23.) Officers were ultimately able to apply handcuffs to Zhao, and Zhao was led into the building. (Id., ¶ 24.)

Plaintiff attests that during the struggle, he, Russell, and Zinnerman repeatedly instructed Zhao to "stop resisting," and Zhao ignored those commands. (Id., ¶ 25.)

Plaintiff then reported the incident to his supervisor, SCBPO Mahady, and prepared a written statement detailing what occurred. Shortly thereafter, SSAs Mania and MacMartin arrived at approximately 1:00 a.m. and met with Mahady and Plaintiff. Mania observed a small cut on Plaintiff's right forearm. (Id., ¶¶ 26-28.)

At 7:30 a.m., Mania and MacMartin advised Plaintiff that he could leave without taking an additional statement from him. (Id., ¶ 29.)

Later, Plaintiff learned that the three women were taking photographs on the pedestrian walkway, a designated "no photograph" zone near a defective entrance gate. Zhao, a Chinese national, had in her possession an expired visa. (Id., ¶¶ 31-34.)  Although Zhao ran from and resisted CBP officers, she was released without charges. Id., ¶ 42.)

As of July 22, 2004, Plaintiff was suspended without pay from his job with DHS. According to Plaintiff, he was "singled out" for prosecution after Zhao initially accused several unnamed DHS officers of pepper spraying and kicking her repeatedly. (Id., ¶¶ 35-36.) Plaintiff avers that since he came out as openly gay in 1997, he has been the subject

---

[6] "Rocky" is Plaintiff's nickname, and is referenced throughout the record.

of harassment by supervisors and employees of DHS based on his sexual orientation, including discipline against him for "trivial and trumped up infractions." (Id., ¶ 37.) Prior to that, Plaintiff claims to have had an "exemplary" record. (Id.) As a result, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint regarding the alleged instances of harassment. (Id., ¶ 39.)

Plaintiff also contends that his prosecution was a result of Bush Administration "caving in" to pressure from the Chinese government, who had published several gruesome photographs of Zhao's injuries through its news agencies as evidence of the "barbarism" of the United States government. (Id., ¶ 40.) Also, that DHS and the United States Justice Department allegedly pressured DHS/CBP Officers to give inculpating testimony regarding Plaintiff. (Id., ¶¶ 43-45.)  Specifically, Plaintiff alleges that: (1) CBP Officers that either witnessed or were involved in the incident were pressured or coached by SSAs Mania and MacMartin to change their testimony to incriminate Plaintiff; (2) the SSAs did not investigate Zhao or the other two women that were with her at the time of the incident;  (3) Officer Russell, who performed an "arm bar" to restrain Zhao, was not investigated; (4) Zhao's injuries were inconsistent with the actions allegedly taken by Plaintiff with respect to his use of force; (5) Zhao's account of the incident was "totally different" from those of the officers; and (6) the allegations in the criminal complaint contain several misstatements regarding statements given to investigators by Officers Russell and Zinnerman, and Zhao Yan. (Plaintiff's Stmt. of Facts (Docket No. 24-4), ¶¶ 82-93.)

### III. DISCUSSION

**A.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.      The Federal Tort Claims Act**

It is beyond cavil that the principle of sovereign immunity shields the United States from being sued without its consent and that the existence of consent is, consequently, a

8

prerequisite for jurisdiction. See United States v. Mitchell, 463 U.S. 206, 212 (1983); FDIC v. Meyer, 510 U.S. 471, 475 (1994); Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004).

In the FTCA, Congress waived sovereign immunity for suits arising from injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This waiver must be "strictly construed in favor of the government." Akutowicz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988). In FTCA actions, the court is bound to apply the law of the place where the incident occurred--here, New York. See Makarova v. United States, 201 F.3d 110, 114 (2d Cir. 2000) (citing Richards v. United States, 369 U.S. 1, 10-15 (1962)).

**C.    The Defendant's Motion**

Plaintiff has moved for summary judgment on the grounds that: (1) Plaintiff's arrest was privileged, therefore there can be no claim of false arrest or false imprisonment; (2) Plaintiff's malicious prosecution claim is barred by the discretionary function and intentional tort exceptions to the FTCA; (3) Plaintiff's arrest and prosecution were supported by probable cause requiring Plaintiff's abuse of process claim to be dismissed, and, in the alternative, Plaintiff's claim of discrimination on account of his sexual orientation and retaliation for prior EEO complaints is not actionable under the FTCA; and (5) Plaintiff's allegations of negligent hiring must be dismissed for lack of subject matter jurisdiction. (Defendant's Mem. of Law (Docket No. 20) at 7-24.)

Plaintiff opposes Defendant's motion (Docket Nos. 24-25), but concedes that the Fifth Cause of Action alleging negligent hiring must be dismissed because his

administrative claim made no mention of negligent hiring as a basis of liability. (Cohen Affirm. (Docket No. 25), ¶ 118.)  Accordingly, the remaining issues for this Court to decide is whether the Defendant is entitled to an order of dismissal and/or summary judgment dismissing Plaintiff's claims of false arrest/false imprisonment, malicious prosecution, and abuse of process.

### 1.    False Arrest/False Imprisonment

Plaintiff's First and Second Causes of Action allege claims of false arrest and false imprisonment under the FTCA. (Am. Compl., ¶¶ 1-69.)

Under New York law, there is no distinction between false arrest and false imprisonment.  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991)).  ("In New York, the tort of false arrest is synonymous with that of false imprisonment.") (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473 (1972)). The elements of a false arrest or false imprisonment claim are that: (1) the defendant intended to confine the plaintiff (2) the plaintiff was conscious of the confinement (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994).

A finding of probable cause is a complete defense to an action for false arrest. Id. (citing Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42,45 (2d Cir. 1985)); see also Johnson v. City of New York, 2006 WL 2354815, at *3 (S.D.N.Y. Aug. 14, 2006) ("a false arrest claim fails if the underlying detention occurred during a search pursuant to a warrant predicated on probable cause." (citing Michigan v. Summers, 452 U.S. 692, 705 (1981)). "[P]robable cause exists where the arresting party possesses knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has

lawful grounds for prosecuting the defendant in the manner complained of." <u>Johnston v. Town of Greece</u>, 983 F.Supp. 348, 353 (W.D.N.Y. 1997).

"Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991) (citations omitted). A reviewing court should pay great deference to the determination of a neutral magistrate that probable cause existed to issue a warrant. <u>United States v. Smith</u>, 9 F.3d 1007, 1012 (2d Cir. 1993). Where the presumption of probable cause arises from a validly-executed warrant, a plaintiff alleging false arrest must show that the officer who submitted the probable cause affidavit "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." <u>Soares v. State of Conn.</u>, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotation and citation omitted); <u>see also</u> <u>Golino</u>, 950 F.2d at 870-71.

In civil rights cases involving the claim of false arrest or prosecution without probable cause, a court "put[s] aside allegedly false information, suppl[ies] any omitted information and determine[s] whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." <u>Id.</u> (citing <u>Cartier v. Lussier</u>, 955 F.2d 841, 845 (2d Cir. 1992), and <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 368 (2d Cir. 1990)).  Thus, "a plaintiff  who argues that a warrant was issued on less than probable cause faces a heavy burden." <u>Golino</u>, 950 F.2d at 870.

In this case, Plaintiff was arrested pursuant to an arrested warrant signed by a Magistrate Judge.  The criminal complaint states that Plaintiff "did knowingly and willfully

11

subject another person to the deprivation of her rights, privileges and immunities secured or protected by the Constitution and laws of the United States and in doing so did cause bodily injury to her." (Plaintiff's Ex. AH (Docket No. 25).) MacMartin submitted an affidavit in support of the arrest warrant, which was signed Magistrate Judge Scott. (Id.) The affidavit contains information that, while on duty, two CBP Officers stated that they witnessed Plaintiff throw Zhao into a wall, strike her in the head with his knee, and grasp her hair and strike her head on the ground while attempting to apprehend her. (Id., ¶¶ 9-10.)

Plaintiff alleges that SSA MacMartin, in obtaining the arrest warrant, materially misrepresented the testimony of the witnesses. (Plaintiff's Mem. (Docket No. 26) at 5.)

### a.  CBP Officer Russell

First, Plaintiff contends that the criminal complaint misrepresented the testimony of CBP Officer Russell, who, in his interview, stated that he saw Plaintiff "push" or "slap" Zhao against a building, (Plaintiff's Ex. J (Docket No. 24) at 3.), yet MacMartin stated in the criminal complaint that Russell stated that he saw Plaintiff "throw" Zhao against a building. (Plaintiff's Ex. AH, ¶ 9); (Cohen Affirm. ¶¶ 8-9.)  The transcript of the interview indicates that Russell used the terms "throw," "push," and "slap" in recounting the incident. (Plaintiff's Ex. J at 3.) Russell's written statement also indicates that he observed Zhao being "thrown" into a building (Plaintiff's Ex. I.)  Thus, the record belies Plaintiff's claim that this portion of Russell's testimony was misrepresented in the criminal complaint, as the difference between "throw," "push," and "slap," all referring to a use of force, amounts to a mere

difference in semantics.[7]

Second, Plaintiff avers that Russell equivocated in his interview with regard to whether he observed Plaintiff strike Zhao in or near the head with his knee, and that he had to be "reminded" of the knee strike during the interview by Mania.  (Cohen Affirm., ¶¶ 14-16.)  The transcript of the interview reads, in relevant part,

> Mania:      At some point you say [Plaintiff] struck her with his knee.
>
> Russell:     Yes . . . I was holding her arm. Amena was arriving. Getting the cuffs out. It - - I know now it's a strike. At the time it looked like he was readjusting, moving from one knee to another.

(Planitiff's Ex. J at 11.)

Russell then went on to say, "[Plaintiff] did his - - his readjustment and knee toward the neck, toward the head. It was - - I wouldn't say it was a swing (unintelligible). But it was movement toward the area of her neck/shoulder." (Id. at 11-12.) When Russell was asked where the knee struck, he answered, "I didn't see that. I saw it stop near the head . . . ." (Id. at 12.) Mania then reminded Russell of his prior written statement that Plaintiff's knee struck Zhao "near the head," and Russell reaffirmed that statement, agreeing with Mania that it was an intentional strike. (Id.)

Plaintiff also takes issue with MacMartin's characterization of the alleged knee-strike by Plaintiff, which states:  "[Russell] witnessed Rhodes grab YZ's hair and strike YZ in the head with his knee." (Planitiff's Ex. AH, ¶ 9.)  During his interview, however, Russell did not state that Plaintiff grabbed Zhao's hair when he struck her with his knee. Rather, describing

---

[7] As Defendant points out, any minor inconsistency in Russell's verbiage can be attributed to a number of factors, including the fact that Russell was describing a fast-moving series of events.

a separate action, Russell said that he observed Plaintiff "coming to a kneeling position, holding [Zhao's] head . . . using her hair as handles, grabbing her hair . . . . That's when the head was struck on the ground." (Plaintiff's Ex. J at 9.) (emphasis added).

Under the Soares analysis, the reviewing court must "put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." Soares, 8 F.3d at 920 (citation omitted). In applying this test, the Court finds that no material change in the criminal complaint is made by including the information that Russell observed Plaintiff strike Zhao "near" the head with his knee, as opposed to striking her "in" or "on" the head, and omitting that Plaintiff grabbed Zhao's hair during the knee-strike.[8]

The SSAs interviewed Zhao, CBP Officer Russell, and CBP Officer Zinnerman. While Plaintiff was not interviewed, a written statement was taken from him in which he stated that when Zhao began to run from the officers, Plaintiff grabbed her, and she pulled away. When Zhao began swinging her arms at Plaintiff, he discharged pepper spray at her. She continued to physically struggle with Plaintiff as they fell to the ground at the side of the building, and ultimately two additional officers assisted Plaintiff in subduing and handcuffing Zhao. (Plaintiff's Ex. A.)

Zinnerman stated that she observed Plaintiff throw Zhao into the wall of a building, observed Plaintiff strike Zhao near her head three times with his knee, and observed Plaintiff grasp Zhao by the hair and strike her head into the ground twice. (Plaintiff's Ex. AH, ¶ 10.) Likewise, Zhao told investigators, through a translator, that she was pepper-

---

[8] For purposes of clarification, the accounts of Officers Russell and Zinnerman indicate that the knee-strike and the head-strike to the ground were two distinct actions by Plaintiff.

sprayed at least twice, kicked at least twice, and struck repeatedly about the head. (Id., ¶ 11.) MacMartin observed that Zhao's eyes were swollen, that she had a large swollen area on the front of her forehead, bruises around the eyes, and a contusion on her forehead. (Id.)

Here, Russell's statements were corroborated by the Zinnerman's statements, Zhao's allegations, and Plaintiff's own attestation that he had been involved in a physical confrontation with Zhao. The fact that there were slight differences in the words used by the various witnesses to the incident and by MacMartin to describe Plaintiff's actions does not demonstrate that MacMartin intentionally or recklessly misrepresented a fact. See, e.g., Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001) ("[W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee.... Nor does it matter that an investigation might have case doubt upon the basis for the arrest."); but see Felmine v. City of New York, No. 09–CV–3768, 2011 WL 4543268 (E.D.N.Y. Sept. 29, 2011) (finding material issue of fact with regard to events giving rise to probable cause where eyewitness accounts were contradictory, causing link between plaintiff and commission of crime with which he was charged to be unclear).

Third, Plaintiff alleges that MacMartin omitted from his account of the interview that Russell testified that he himself had placed an "arm bar" restraint on Zhao and brought her to the ground, and that this constitutes a "crucial material omission, since it was later established at trial that it was this action by Officer Russell, and not Plaintiff, that was the only possible cause of the hematoma on Zhao Yan's head, which was by far the most

serious of her injuries." (Cohen Affirm., ¶¶ 10-11.)[9] This information, however, was not necessary to the finding of probable cause. As stated earlier, law enforcement officials are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Even if the criminal complaint were to include the fact that Russell placed Zhao in an "arm bar" restraint during the incident, there are nonetheless two eyewitness accounts stating that Plaintiff was observed pushing or shoving Zhao into a wall, striking her head on the ground, and striking near her head with his knee. Those accounts, coupled with Zhao's allegations and reported injuries, make it reasonable for MacMartin to find probable cause that Plaintiff committed a violation of 18 U.S.C. § 242. Contrary to Plaintiff's assertion, the omission of Russell's statement that he restrained Zhao using an arm bar technique does not exculpate Plaintiff. See Simms v. Village of Albion, N.Y., 115 F.3d 1098 (2d Cir. 1997) ("the omitted information must be shown to be material and necessary to a finding of probable cause."); but see Golino, 950 F.3d at 871-872 (factual question precluded summary judgment, even though state court magistrate found probable cause for arrest, where officers deliberately withheld information from magistrate that several witnesses' descriptions of murder suspect were wholly inconsistent with plaintiff's characteristics, and that the killer's blood type was identifiable but no blood test of plaintiff had been ordered.)

Accordingly, Plaintiff has not rebutted the presumption of probable cause because

---

[9] Plaintiff does not cite to any evidence in the record that supports his assertion that Russell caused Zhao's forehead injury. However, this Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

he has not shown that Russell's testimony was misrepresented in the criminal complaint, much less knowingly, intentionally, or with reckless disregard for the truth.

### b.   CBP Officer Zinnerman

With regard to the testimony of Zinnerman, Plaintiff's allegation that her testimony was coached by SSAs Mania and MacMartin (Cohen Affirm., ¶¶ 38-39),  is unsupported by the record.

Plaintiff includes a partial transcript of his union arbitration hearing (which took place after his arrest, trial, and acquittal), at which Zinnerman testified that at the time of the incident she was a probationary employee, felt that the investigation by Mania and MacMartin was "intimidating," and that she had "no choice" but to cooperate with investigators. (Plaintiff's Ex. Z (Docket No. 24) at 181-82, 188-89.)

Zinnerman's testimony does state that she was intimidated by the investigatory conduct of Mania and MacMartin, referring to it as a "good cop, bad cop type of situation," and that she would leave the Internal Affairs interviews crying because of the treatment she received from the investigators. (Plaintiff's Ex. Z at 188-89.) However, she goes on to describe the situation as  "not so much pressure, [but] it wasn't comfortable." (Id.) The transcript further reveals that Zinnerman unequivocally answered in the negative when asked, "Did you think something bad would happen to you if you came out in favor of Officer Rhodes?" (Id. at 188.)

This Court's reading of the evidence does not support Plaintiff's argument that Zinnerman's previous testimony was mischaracaterized in the criminal complaint. Rather, the account of the incident that Zinnerman gave to investigators was substantially similar, if not identical, to the written account provided to her supervisor immediately after the

incident occurred. On that basis alone Plaintiff fails to establish bad faith on the part of MacMartin or that an intentional and material misrepresentation was made in this instance. See generally, Smolicz v. Borough/Town of Naugatuck, No. 04-CV-00855, 2006 WL 2085291, at *4 (D.Conn. July 25, 2006) ("A misrepresentation or omission is intentional when the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth. A factual representation is material when it is a necessary element for the finding of probable cause.") (internal quotation omitted).

Thus, Plaintiff fails to rebut the presumption of probable cause because he does not show that Zinnerman's testimony was procured or coached in bad faith by the investigators.

### c.     The Complainant, Zhao Yan

Plaintiff's allegation that Zhao's testimony was not credible (Cohen Affirm., ¶¶ 30-35), is also insufficient to rebut the presumption of probable cause.

A police officer may rely upon the statements of victims or witnesses to determine the existence of probable cause for the arrest, see Martinez v. Simonetti, 202 F.3d 625 (2d Cir. 1994), regardless of the ultimate accurateness or truthfulness of their statements. Bernard, 25 F.3d at 103. "'[A]bsent circumstances that raise doubt as to the victim's veracity," a victim's report of a crime is generally enough, by itself, to establish probable cause." See Koester v. Lanfranchi, 288 Fed. Appx. 764, 766 (2d Cir. 2008) (unpublished opinion) (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir.1995)). As stated earlier, police officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti, 124 F.3d at 128. Indeed, probable cause can exist even where it is based on mistaken information, so long as the

arresting officer acted reasonably and in good faith in relying on that information. Brogdon v. City of New Rochelle, 200 F.Supp.2d 411, 419 (S.D.N.Y. 2002). Thus, while a trial jury might assess the credibility of a complainant when reviewing evidence to determine guilt beyond a reasonable doubt, the sole question here is whether, "considering all facts known by the defendants, they had enough reasonably trustworthy information ... to warrant a person of reasonable caution" to believe that the plaintiff had committed a crime. Koester, 288 Fed. Appx. at 767 (internal citations and quotation marks omitted).

Plaintiff provides no evidence that either Mania or MacMartin had reason to doubt Zhao's veracity, and, contrary to his assertion, the additional eyewitness accounts of the incident at least partially corroborated her version of events. (Cohen Affirm., ¶¶ 48-50.) It is undisputed that Plaintiff applied some amount of physical force toward Zhao during the altercation, and Zhao did exhibit physical injury upon medical examination. In any event, the investigators were not required to assess whether the complainant's testimony was beyond question or reproach; instead, they were required not to obtain the arrest warrant or to execute it if it was clearly without foundation. See, e.g., Koester, 288 Fed. Appx. at 766 (arrest of park police officer on sexual abuse charges was supported by probable cause not withstanding argument that various circumstances raised doubt as to whether the complainant provided a credible account of the incident).

Finally, to the extent Plaintiff seeks to mount the same challenge on the grounds that Russell's and Zinnerman's testimony was not credible, this Court rejects that argument for the same reasons. (Cohen Affirm., ¶ 61.)

### d.    Failure to Investigate

Plaintiff next contends that SSAs Mania and MacMartin failed to delve into the

possible exculpatory defenses available to Plaintiff. Specifically, Plaintiff faults the investigators for failing to further investigate Zhao's immigration status, failing to inquire as to whether the "arm bar" applied by Russell was the cause of the hematoma on Zhao's head, and failing to interview Plaintiff for a second account of his version of incident. (Cohen Affirm., ¶¶ 52-59, 63-65.)

It is well-settled, however, that there is no duty imposed upon arresting officers "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest," Jean v. Montina, 412 Fed. Appx. 352, 353–54 (2d Cir. Feb. 9, 2011) (summary order) (quoting Jocks v. Tavernier, 316 F.3d 128, 135–36 (2d Cir. 2003)), nor must officers "explore and eliminate every theoretically plausible claim of innocence before making an arrest." Id. at 354 (quoting Ricciuti, 124 F.3d at 128; see also Finigan v. Marshall, 574 F.3d 57, 63 (2d Cir. 2009) ("[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."); Curley, 268 F.3d 65, 70 (2d Cir. 2001) (same).

The investigators' failure to conduct a more extensive investigation prior to arresting Plaintiff did not defeat the probable cause that existed to arrest plaintiff for committing a violation of 18 U.S.C. § 242. See, e.g. Jean, 412 Fed. Appx. at 354 (arresting officer's failure to conduct a more extensive investigation before arresting the plaintiff did not defeat probable cause); Panetta v. Crowley, 460 F.3d 388, 395–96 (2d Cir.2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); Curley, 268 F.3d at 70 (holding that it does not matter that an

20

investigation might have cast doubt upon the basis for the arrest). Given the existence of probable cause for Plaintiff's arrest, he cannot maintain his FTCA false arrest and false imprisonment claims against the Defendant as a matter of law.

While Plaintiff clearly disagrees with the manner in which the criminal investigation was conducted by the Defendant (Cohen Affirm., ¶¶ 70-72), he fails to make a specific showing that there is a genuine issue for trial with regard to whether Defendant had probable cause to arrest him, in light of the fact that his arrest was made pursuant to an arrest warrant signed by a Magistrate Judge. Moreover, the arguments raised by Plaintiff to undermine probable cause do not raise a triable issue of fact because no rational jury could determine that Plaintiff has met his burden of showing that the warrant was premised on false statements and/or material misrepresentations.

Accordingly, Plaintiff's false arrest/false imprisonment claims  (First and Second Causes of Action)  must be dismissed.[10]

### 2.    Malicious Prosecution

Plaintiff's Second Cause of Action asserts that he was maliciously prosecuted by Defendant. (Am. Compl., ¶¶ 70-77.)

Defendant has moved to dismiss this claim for lack of subject matter jurisdiction because it is barred by the discretionary function and intentional tort exceptions to the FTCA's waiver of sovereign immunity,[11] and, in the alternative, for summary judgment

---

[10] Because Plaintiff's false arrest/false imprisonment claims fail as a matter of law, this Court need not address Defendant's contention that the FTCA is not the proper vehicle for Plaintiff to assert his underlying claims of retaliation/employment discrimination. (Defendant's Mem. at 20.)

[11] Federal courts do not have subject matter jurisdiction over claims falling within one of the exceptions to the FTCA's waiver of sovereign immunity. See Fazi v. United States, 935 F.2d 535, 537 (2d Cir.1991). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of the complaint where the court

because Plaintiff's prosecution was based on probable cause. (Defendant's Mem. at 10-17.) This Court will address each of the Defendant's arguments in turn.

### a.   Discretionary Function Exception

In enacting the FTCA, Congress chose to waive immunity as to certain claims against the United States. 28 U.S.C. § 1346(b). The waiver is not absolute. Rather, the FTCA specifically defines causes of action that may be maintained against the federal government. In addition, a list of exceptions narrows the availability of claims that may be asserted. 28 U.S.C. § 2680. The United States' waivers of sovereign immunity are to be strictly construed, Morales. v. United States, 38 F.3d 659 (2d Cir. 1994) (citations omitted), and "any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant." Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998).

One of the FTCA's exceptions, commonly referred to as the "discretionary function exception," excepts from the government's waiver:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

---

lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "The burden of proving jurisdiction is on the party asserting it." Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) (internal quotation marks and citation omitted). In reviewing such a motion, "the court must accept as true all material factual allegations in the complaint, but [it will] not draw inferences from the complaint favorable to plaintiffs." J.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir.2004). Moreover, on a Rule 12(b)(1) motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." J.S., 386 F.3d at 110.

With respect to malicious prosecution claims, this exception to the Government's waiver of sovereign immunity under the FTCA further precludes a plaintiff's tort claims insofar as they arise from a prosecutor's decision to indict and prosecute. 28 U.S.C. § 2680(a); Gray v. Bell, 712 F.2d 490, 513 (D.C.Cir.1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of government discretion in enforcing criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception"). Likewise, the discretionary function exception bars claims of malicious prosecution against government "investigative and law enforcement agents aiding in the investigation to whether to prosecute." See Morales v. United States, Nos. 94 Civ. 6845, 94 Civ. 8773, 1997 WL 285002, at *1  (S.D.N.Y. May 29, 1997) (citing Moore v. Valder, 65 F.3d 189, 196–97 (D.C. Cir. 1995)). "However, the exception does not protect investigative and law enforcement agents from such claims where the actions of those agents are 'sufficiently separable' from the 'protected discretionary decision" to prosecute.'" Id. (quoting Moore, 65 F.3d at  196). "While courts have struggled to articulate clear rules for identifying conduct that is 'sufficiently separable' . . . allegations based on the quality of the investigation generally do not give rise to FTCA claims."  Wang v. United States, No. 01 CIV 1326, 2001 WL 1297793, at *2-*3 (S.D.N.Y. Oct. 25, 2001) (internal quotation omitted) (collecting and comparing cases).

Defendant asserts that Mania and MacMartin did not proceed to arrest Plaintiff until they had consulted with the United States Attorney's Office, and that as of July 22, 2004, that office made all of the decisions relating to the investigation and prosecution of Plaintiff, thereby falling within the contours of the discretionary function exception. Defendant has

23

submitted an affidavit by SSA MacMartin which states that, in the hours following the incident, the United States Attorney's Office directed the investigation and prosecution, which included seeking an arrest warrant, a search warrant, and a Grand Jury Indictment. (Defendant's Ex. B, ¶¶ 11-13, 16, 18.)   Defendant also provides an affidavit by First Assistant United States Attorney Kathleen Mehltretter stating that, inter alia, the precise manner in which an Assistant United States Attorney ("AUSA") investigates and prosecutes a criminal matter is left to the judgment and discretion of each individual AUSA.

On the other hand, Plaintiff contends that the SSAs actively investigated the case through August, 2004, and that the United States Attorney's Office "apparently attempted to insulate the investigators from liability by having them cede all authority to make decisions on the case." (Plaintiff's Mem. at 7.) However, Plaintiff points to no evidence before this Court that would support that proposition, and thus his contention is rooted in speculation.  While Plaintiff disagrees with the investigators' methods of investigation and the alleged political motivation behind his arrest and subsequent prosecution, neither gives rise to a cognizable malicious prosecution claim. Wang, 2001 WL 1297793 at *4 (allegation that plaintiff's arrest for " ideological reasons and without probable cause" insufficient to establish claim of malicious prosecution).

While this Court recognizes that circumstances do exist where an investigator's conduct is independent or quasi-independent from the non-actionable decision to prosecute and "designed to corrupt the fairness of a prosecution," there are no such circumstances present on this record. See id., (citing Tri–State Hosp. Supply Corp., 142 F. Supp. 2d 93, 100–101 (D.D.C. 2001) (lying to bring about a prosecution gives rise to a FTCA claim), and Moore v. Valder, 65 F.3d 189 (D.C. Cir. 1995) (disclosure of grand jury

24

testimony to third parties is "sufficiently separable")). For that reason, allegations based on the "quality of the investigation" generally do not give rise to FTCA claims. See Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986); cf. Limone v. United States, 271 F.Supp.2d 345 (D. Mass. 2003) (FBI agents' alleged conduct of knowingly and intentionally encouraging government informant to provide false testimony in murder prosecution against three defendants, working actively with state authorities to obtain and sustain unjust convictions against the defendants, and covering up criminal activities of another informant was not "discretionary," as would render United States immune to subsequent claims under the FTCA based on malicious prosecution.)

### b.   Intentional Tort Exception

A second exception relevant here provides that the FTCA's waiver of sovereign immunity shall not apply to "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680(h). The "intentional torts exception" to the general rule of sovereign immunity does not, however, apply to the "acts or omissions of investigative or law enforcement officers." The statute defines a law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680.

It is well-settled that "the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors," Bernard, 25 F.3d at 104, and thus "[a] malicious prosecution claim is barred by the FTCA when 'control of the prosecution pass[es] to the prosecutor.'" Davis v. United States, No. 03 Civ. 1800, 2004 WL 324880,

at *6 (S.D.N.Y.  Feb. 19, 2004) (quoting Bernard, 25 F.3d at 104). According to the Second

Circuit, control passes to the prosecutor when the Grand Jury issues an indictment. See

Bernard, 25 F.3d at 104 ("Once the grand jury indicted Bernard, control of the prosecution

passed to the prosecutor and was no longer within the agent's authority.).

Defendant avers that, although the proceedings against Plaintiff began with a

criminal complaint by MacMartin, an AUSA controlled Plaintiff's prosecution from the

outset, including seeking the criminal complaint and the warrant of arrest. (Plaintiff's Mem.

at 14.). District courts in this Circuit have held that once the prosecutors take control of the

case, a court cannot impose liability for malicious prosecution unless the law enforcement

agents "can be shown to have taken an active part in the proceedings." Dirienzo v. United

States, 690 F.Supp. 1149, 1158 (D. Conn. 1988). Specifically, "'the defendant must take

an active part in [the] prosecution after learning that there is no probable cause for

believing the accused guilty.... His share in continuing the prosecution must be active, as

by insisting upon or urging further prosecution.'" Id. (quoting Restatement (Second) of Torts

§ 655 cmt. c (1977)); see also Frigerio v. United States, No. 10 Civ. 9086, 2011 WL

3163330  (S.D.N.Y. July 22, 2011).

While Plaintiff urges this Court to find that the investigative reports show that the

SSAs continued to take an active role in the investigation after the case was handed over

to the United States Attorney (Plaintiff's Ex. W (Docket No. 24)), there are no facts alleged

that suggest that MacMartin or Mania exerted control over, insisted upon, or urged

Plaintiff's prosecution. See Frigerio, 2011 WL 3163330, at *10  ("Without facts

demonstrating that the agents exerted such control over the prosecution that the

prosecutor ceased to exert his independent judgment, the claim of malicious prosecution

cannot proceed.") Plaintiff's malicious prosecution claims is therefore barred under the FTCA's intentional tort exception.

Even if this Court were to find that it had subject matter jurisdiction to hear claims against the investigators, Plaintiff's claim still fails as a matter of law because his prosecution was based upon probable cause, as discussed below.

### c.    Probable Cause

The tort of criminal malicious prosecution in New York involves four elements: (1) the defendants' initiation or continuation of a criminal proceeding, (2) termination of the proceeding in the plaintiff's favor, (3) lack of probable cause to commence or continue the proceeding, and (4) actual malice as a motivation for the defendants' actions. Zellner v. Summerlin, 494 F.3d 344, 361 (2d Cir. 2007); Jocks, 316 F.3d at 136. Lack of probable cause is an essential element of malicious prosecution, and its existence is a complete defense to a malicious prosecution claim. Aretakis v. Durivage, 07-CV-1273, 2009 WL 249781, at *13 (N.D.N.Y. Feb. 3, 2009) (citing Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003), other citations omitted).

In this case, Plaintiff was arrested based on a warrant issued by Magistrate Judge Scott. The SSAs did not arrest Plaintiff without a warrant, but rather they presented their evidence supporting probable cause to the Magistrate. Normally, the issuance of a warrant by a neutral magistrate creates a presumption of probable cause. Golino, 950 F.2d at 870. The officers are entitled to rely on the issuing judge's decision that probable cause exists and the officers are shielded from any liability relating to the arrest if they relied on the judge's decision in good faith. United States v. Leon, 468 U.S. 897 (1984). Likewise, a grand jury indictment also creates a presumption of probable cause that can be overcome

only by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Bernard, 25 F.3d at 104 (citing Colon v. City of New York, 60 N.Y.2d 78 (1983)).

Plaintiff argues that the indictment in this case cannot serve as the basis for a finding of probable cause because the Grand Jury proceedings were tainted by the false testimony of crucial witnesses and the omission of facts tending to exonerate Plaintiff. (Cohen Affirm., ¶ 78; Plaintiff's Mem. at 8.) However, Plaintiff's allegations of false testimony and omissions by Grand Jury witnesses do not demonstrate fraud, perjury, suppression of evidence, or police misconduct. For example, Plaintiff takes issue with Russell's Grand Jury testimony that he observed Plaintiff "propel" Zhao into the wall, rather than "push" her into the wall as he had previously told investigators. (Cohen Affirm., ¶ 81.) Similarly, he argues that Russell's Grand Jury testimony was inconsistent inasmuch as he testified that when he arrived at the scene, he saw Zhao "bouncing off the wall," whereas he previously stated that he saw her "crouching over" when he arrived. (Cohen Affirm., ¶ 82.) Another alleged inconsistency in Russell's Grand Jury testimony was that he testified that Zinnerman produced her handcuffs "just before the alleged headstrikes," whereas he previously stated under oath that she "got her cuffs out when she first arrived." (Cohen Affirm., ¶ 84.)

What Plaintiff's allegations fail to show, however, is that Russell's testimony was procured by the investigators in bad faith and/or perjured, rather than a result of confusion or lapse of memory regarding a fast-moving series of events. Based on a review of the evidence submitted, Plaintiff has not met the heavy burden of rebutting the presumption of probable cause. See Hathaway v. County of Essex, 995 F. Supp. 62, 69 (N.D.N.Y.

28

1998). ("Reliance on variations in testimony, as well as defendants' failure to pursue further avenues of investigation, as evidence of fraud, suppression of evidence, or perjury are insufficient to overcome the presumption of probable cause.") .

Likewise, the fact that CBP Officer Kevin Ulmer testified consistently that he did not see Plaintiff throw or push Zhao against the wall (Cohen Affirm., ¶ 87) does not suggest that Russell's and other witnesses' testimony was false. "[C]onflicting testimony is a routine part of the litigation process and, without more, cannot rebut the presumption of probable cause." Cipolla v. County of Rensselaer, 129 F.Supp.2d 436, 454 (N.D.N.Y. 2001).

In support of his claim that the Grand Jury witnesses' testimony was false, Plaintiff submits an affidavit from former CBP Officer Kathleen McKeon, who testified for the defense at Plaintiff's criminal trial. Therein, McKeon attests that she had conversations with Zinnerman indicating that Zinnerman was pressured by investigators to testify and that she became "confused" and had changed parts of her previous testimony. (McKeon Aff. (Docket No. 31), ¶¶ 16-19.) However, McKeon's statement concerning what Zinnerman told her is hearsay and not admissible under any hearsay exception, see Fed. R. Evid. 801(c), 802, and it is well-established that hearsay is not competent evidence in opposition to a motion for summary judgment. Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999). Accordingly, this Court disregards McKeon's affidavit with regard to Zinnerman's statements.

McKeon herself also claims to have felt pressured to give testimony incriminating to the Plaintiff. Because McKeon refused to acquiesce to investigators, she believes DHS targeted her, reprimanded her for trivial incidents, and created a hostile work environment which eventually resulted in her resignation. (McKeon Aff., ¶¶ 20-21.) This does not serve

to create a material issue of fact as to whether the investigators coerced Zinnerman or Russell to perjure themselves, however, because their written statements and oral statements to investigators were, in sum and substance, consistent with one another. (Plaintiff's Ex. I-L.) In light of the fact that Zinnerman and Russell separately implicated Plaintiff in their initial written memoranda to the CBP Immigration Port Director at Niagara Falls as well as to Mania and MacMartin in their interviews, no material issue of fact exists as to whether investigators threatened, coerced, or otherwise acted in bad faith so as to overcome the presumption of probable cause created by the Grand Jury indictment.

For these reasons, Plaintiff is therefore entitled to summary judgment dismissing the Third Cause of Action alleging malicious prosecution.

### 3.    Abuse of Process

Plaintiff's Fourth Cause of Action alleges that Defendant "employed legal process to improperly arrest and prosecute Plaintiff with the intent to harm Plaintiff without excuse or justification." (Am. Compl., ¶ 79.) He claims that the illegitimate objectives of Defendant were to "appeas[e] the Chinese government, to punish Plaintiff for his sexual orientation, and in retaliation for filing an EEOC complaint." (Id., ¶ 80.)

In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  "[T]he New York Court of Appeals has made clear that '[a] malicious motive alone ... does not give rise to a cause of action for abuse of process.'" Savino, 331 F.3d at 77 (quoting Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984); citing and

collecting cases). "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution. See id., 331 F.3d at 77.

Plaintiff avers that because there was no probable cause to arrest and prosecute Plaintiff, there is, at a minimum, a triable issue of fact as to whether Defendant abused its process with regard to Plaintiff's arrest and prosecution. (Cohen Affirm., ¶ 106.)

On the outset, Plaintiff has not established Defendant's "intent to harm" or a "collateral objective" with respect to this Cause of Action. Rather, his allegation of retaliation is merely an improper motive that is insufficient to give rise to an abuse of process claim. Savino, 331 F.3d at 77 ("to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution"); see also Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Assn., 38 N.Y.2d 397 (1975) (collateral purposes include economic harm, extortion, blackmail).

Even if this Court were to accept Plaintiff's argument, on its face, that DHS succumbed to pressure from the Chinese Government to prosecute Plaintiff, he does not show an intent to harm, especially in light of the fact that the invocation of criminal process against Plaintiff was justified by probable cause, as previously discussed in this Decision and Order. See supra, Part III.C.1.; see also Mangino v. Incorporated Village of Patchogue, --- F.Supp.2d ----, 2011 WL 4527286, at *3 (E.D.N.Y. 2011) ("[W]here plaintiff's only argument to support such elements [intent to harm and collateral objective] is a purported

lack of probable cause, such claims must fail if probable cause is found to exist."); <u>Sforza v. City of New York</u>, NO. 07 Civ. 6122,  2009 WL 857496, at *17 (S.D.N.Y. 2009) ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process, particularly the second element.").

Accordingly, this Court finds that summary judgment is appropriate in favor of the Defendant dismissing the Fourth Cause of Action alleging abuse of process.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the Defendant is entitled to summary judgment in its favor, and the Amended Complaint is dismissed with prejudice.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment and/or Dismissal (Docket No. 17)  is GRANTED in its entirety.

FURTHER, that the case is DISMISSED.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.


Dated:   March 6, 2012
         Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                    United States District Court